UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANLEY H. SOLVEY,<br><br>Plaintiff,<br><br>vs.<br><br>DR. ANDREW ZEPP,<br><br>Defendant. | **1:19-cv-01444-JLT-GSA-PC**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT (ECF NO. 55) BE GRANTED AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 53) BE DENIED**<br><br>**OBJECTIONS DUE <u>ON OR BEFORE OCTOBER 4, 2023</u>** |

## I.    BACKGROUND

Stanley H. Solvey ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds with Plaintiff's First Amended Complaint filed on January 14, 2020, against defendant Dr. Andrew Zepp ("Defendant") for refusing to provide Plaintiff with sufficient pain medication for Plaintiff's testicular cyst as he awaited surgery from February 5, 2019 to March 25, 2019, in violation of the Eighth Amendment.  (ECF Nos. 14 & 39.)

Currently before the court are the parties' cross motions for summary judgment.  For the reasons set forth below, the court recommends that Plaintiff's motion for summary judgment be denied, and Defendant's cross motion for summary judgment be granted.

## II.     PROCEDURAL BACKGROUND

The parties' cross motions for summary judgment are fully briefed and submitted on the record, pursuant to Local Rule 230(*l*), which provides as follows:

> Motions in Prisoner Actions.  All motions, except motions to dismiss for lack of prosecution, filed in actions wherein one party is incarcerated and proceeding in propria persona, shall be submitted upon the record without oral argument unless otherwise ordered by the Court. Such motions need not be noticed on the motion calendar. Opposition, if any, to the granting of the motion shall be served and filed by the responding party not more than twenty-one (21) days after the date of service of the motion. A responding party who has no opposition to the granting of the motion shall serve and file a statement to that effect, specifically designating the motion in question. Failure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions. The moving party may, not more than fourteen (14) days after the opposition has been filed in CM/ECF, serve and file a reply to the opposition. All such motions will be deemed submitted when the time to reply has expired.

Local Rule 230(*l*).

### A.     <u>Plaintiff's Motion for Summary Judgment (ECF No. 53.)</u>

On June 9, 2022, Plaintiff filed a motion for summary judgment.  (ECF No. 53.)  On June 27, 2022, Defendant Dr. Zepp filed a cross motion for summary judgment and opposition to Plaintiff's motion for summary judgment.  (ECF No. 55.)  Under Local Rule 230(*l*), the deadline for Plaintiff to file a reply to the opposition was July 14, 2022 (14 days after the opposition was filed, plus 3 additional days under Fed. R. Civ. P. 6(d)).   Plaintiff failed to file a timely reply and therefore, under Local Rule 230(*l*), Plaintiff's motion for summary judgment was deemed <u>submitted on July 14, 2022</u>, when Plaintiff's time to reply expired.

### B.     <u>Defendant's Cross Motion for Summary Judgment (ECF No. 55.)</u>

On June 27, 2022, Defendant filed a cross motion for summary judgment.  (ECF No. 55.) On September 12, 2022, after being granted two extensions of time, Plaintiff filed an opposition to the cross motion.  (ECF Nos. 61, 65, 69.)  On October 14, 2022, after being granted two extensions of time, Defendant filed a reply to the opposition. (ECF Nos. 72, 74, 75.)  Therefore, under Local Rule 230(*l*), Defendant's cross motion for summary judgment was deemed <u>submitted on October 14, 2022</u>, when Defendant filed his reply to the opposition.

### C.   Plaintiff's Surreply (ECF No. 78.)

On December 15, 2022, after the cross motions for summary judgment were submitted on the record, Plaintiff filed a motion for a finding of perjury and for sanctions against Defendant. (ECF No. 78.)  On January 5, 2023, Defendant filed an opposition to the motion.  (ECF No. 79.) On January 10, 2023, Plaintiff filed an addendum to the motion.  (ECF No. 80.)  On January 17, 2023, Plaintiff filed a reply to Defendant's opposition.  (ECF No. 81.)

On February 17, 2023, the Court accepted Plaintiff's motion for a finding of perjury and for sanctions as a permissible surreply to Defendant's October 14, 2022 reply, and ordered Defendant to file an additional briefing in opposition to the surreply.  (ECF No. 82.)

On March 7, 2023, Plaintiff requested leave to submit a reply to Defendant's additional briefing, (ECF No. 84), and on March 15, 2023, the Court denied Plaintiff's request, (ECF No. 85).

On March 31, 2023, Defendant filed his additional briefing in opposition to the surreply. (ECF No. 89.)

## III.   PLAINTIFF'S SURREPLY (ECF No. 78.)

It is well-established that the purpose of a surreply is to "enable the nonmovant to contest matters presented for the first time in the opposing party's reply." Klayman v. Fox (D.D.C. June 5, 2019, Civil Action No. 18-1579 (RDM)) 2019 U.S.Dist.LEXIS 94299, at *43 (quoting Nix El v. Williams, 174 F. Supp. 3d 87, 92 (D.D.C. 2016)).  "The purpose of a surreply is to afford 'the nonmoving party . . . an opportunity to respond to new material raised for the first time in the movant's reply.'" United States v. Bruce, No. 1:18-CR-00464-JCH, 2018 U.S.Dist.LEXIS 110810, 2018 WL 3232353, at *1 (D.N.M. July 2, 2018) (Herrera, J.) (quoting Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005)).  "'[N]ew material' means 'new evidence and new legal arguments' raised in the movant's reply brief."  Id.  A district court may only allow a surreply to be filed "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief."   Hill v. England, No. CV-F-05-869 REC/TAG (E.D. Cal. Nov. 9, 2005), 2005 WL 3031136 at *1.

Plaintiff's surreply brings motions under Rules 12(c), 56(h) and 11 of the Federal Rules of Civil Procedure, requesting a finding of perjury in declarations and interrogatories submitted by Defendant Dr. Zepp and Defendant's expert declarant Dr. Bennett Feinberg, with imposition of sanctions.  In the alternative, Plaintiff seeks judgment against Defendant Zepp due to bad faith conduct, and findings of fraud, malice, oppression, and equitable estoppel.  Plaintiff contends that Defendant Zepp has submitted several falsified and perjured declarations and a response to interrogatories submitted in opposition to the pending motion for summary judgment.

Given the limited purpose of a surreply, the Court shall initially determine whether the matters raised in Plaintiff's surreply are properly brought.

**A.    Plaintiff's request for the court to find perjury, unclean hands and bad faith**

To the extent that Plaintiff seeks a court finding of perjury, it is not appropriate for the Court to consider Plaintiff's motion as part of the summary judgment analysis, where the Court is precluded from deciding matters of credibility of the evidence.  Therefore, the Court shall not address the perjury issue here.  The proper way for Plaintiff to challenge Defendant's evidence is with his own evidence, through proper motions or oppositions to motions, and at trial, by attempting to demonstrate Defendant's alleged lack of credibility through cross-examination and reference to the evidence.  Wilkins v. Barber, No. 2:19-cv-1338 WBS KJN P (E.D.Cal. Sep. 7, 2021), 2021 U.S.Dist.LEXIS 169407, at *9-10.  Plaintiff cannot simply question Defendant's credibility to foreclose summary judgment.  McGiboney v. Corizon, No. 1:18-cv-00529-DCN (D. Idaho Mar. 22, 2021), 2021 U.S.Dist.LEXIS 53475, at *30 (citing Far Out Productions, Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001)). Instead, the nonmoving party "must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial.'"  Id. (citing Far Out Productions, Inc. , 247 F.3d at 997(quoting Fed. R. Civ. P. 56(e)); Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (noting that the nonmoving party must "identify with particularity the evidence that precludes summary judgment.")). "If the evidence is colorable, or is not significantly probative, summary judgment may be granted."  Id. (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249-50 (1986)).

In addition, objections to the evidence at the summary judgment phase are viewed with disfavor.  Hollis v. Sloan, No. 2:08-cv-2674 GEB KJN P) (E.D. Cal. Oct. 24, 2012), 2012 U.S.Dist.LEXIS 153681, at *3.)  "If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, [a] motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits."  Id. (citing Dawe v. Corrections USA, 2010 U.S.Dist.LEXIS 16454, 2010 WL 682321, *7 (E.D. Cal. 2010) (citing 5A Wright & Miller, Federal Practice and Procedure: Civil 2d §1380.))  Here, Plaintiff moves to strike or preclude certain defenses and evidence found in Dr. Zepp's and Dr. Feinberg's declarations, based on unclean hands and bad faith.  Plaintiff's motions to strike shall be denied.

Importantly, Plaintiff's surreply fails to accomplish the main purpose of a surreply, which is to provide Plaintiff an opportunity to respond to *new material* raised for the first time in Defendant's reply.  Plaintiff's surreply does nothing more than raise objections to Defendant's evidence that Plaintiff either made previously or had the opportunity to make previously.  In fact, Plaintiff states in the surreply that the "evidence of this perjury and falsified declarations is meticulously presented in Plaintiff's 'Motion for summary judgment: opposition/reply' (with cites to the evidence and a declaration with a memorandum.)  Please refer to that document."  (ECF No. 78 at 2:7-12.)  The evidence of which Plaintiff objects to in his surreply was submitted by Defendant in his cross-motion for summary judgment, or was otherwise available to Plaintiff prior to the filing of Defendant's reply, and Plaintiff either objected to, or had ample opportunity to object to the evidence before now.  Plaintiff surreply challenges evidence from Dr. Zepp's and Dr. Feinberg's declarations and exhibits, which were submitted by Defendant on June 27, 2022. (ECF No. 55-7 & 55-8.)  In his 173-page opposition to Defendant's cross-motion, Plaintiff specifically addresses Defendant's Defenses (ECF No. 69 at 75 ¶VIII), Dr. Zepp's Declaration (ECF No. 69 at 83 ¶ IX), Dr. Feinberg's Declaration (ECF No. 69 at 85 ¶X), Dr. Zepp's interrogatory responses (ECF No. 69 at 87 ¶XI), and Defendant's Statement of Undisputed Facts (ECF No. 69 at 95 ¶XIV).  If any of Defendant's evidence was not addressed by Plaintiff in his 173-page opposition, it was not because Plaintiff lacked the opportunity to do so.  Therefore, Plaintiff has not shown good cause for the Court to address his surreply.

**B.**   **Other miscellaneous sanction  requests in Plaintiff's surreply**

Defendants argue and the Court concurs that Plaintiff's Rule 12(c) motion for judgment on the pleadings must be denied because Plaintiff has not limited the motion to the face of the pleadings.  (see Rule 12(d) ("If on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."))  Here, Plaintiff addresses matters outside of the pleadings. Defendant also argues that the 12(c) motion was not timely filed by the Court's deadline for filing dispositive motions.

Plaintiff also brings a Rule 37 motion for terminating sanctions; a Rule 56(h) motion for finding of bad faith in declarations; a motion to exclude expert opinions and legal arguments at summary judgment and trial; a motion to exclude exhibits; a motion for equitable estoppel and a finding of unclean hands; and a Rule 11 motion for sanctions for misrepresentation of facts and misstatement of law.

Plaintiff's Rule 37 motion for terminating sanctions should be denied.  Defendant cites Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007), arguing that a Rule 37 motion, (Failure to make disclosures or to Cooperate in Discovery; Sanctions) should only be brought for "willfulness, bad faith, [or] fault.")  Defendant argues that in this case there is no basis for terminating sanctions because there is no discovery violation or bad faith, and the responses Plaintiff takes issue with will not impact a finding on the merits in this case.

Defendant argues that a Rule 56(h) motion for bad faith, which Plaintiff appears to bring, is meant to address declarations that "knowingly contain perjurious or intentionally false assertions" for an improper purpose, which does not describe Dr. Zepp's or Dr. Feinberg's declarations here.  (ECF No. 89 at 27:15 (quoting Arrant v. Richardson, No. 17-393-JVS (AGR), 2019 U.S.Dist.LEXIS 225562, at *10 (C.D. Cal. Dec. 10, 2019) (quoting Coble v. Renfroe, No. C11- 0498-RSM, 2012 U.S.Dist.LEXIS 149599, at *5 (W.D. Wash. Oct. 17, 2012)). The conduct involved "generally must be egregious" and "affect the disposition of the summary judgment motion," Raher  v. Fed. Bureau of Prisons, No. 03:09-cv-00526-ST, 2011 U.S.Dist.LEXIS

117725, at *22 (D. Ore. Oct. 12, 2011).  Defendant argues that Plaintiff's motion has not shown evidence of false statements meeting those requirements.

The Court agrees with Defendant that Plaintiff provides no basis to grant Plaintiff's request to exclude expert opinion and legal arguments because "experts are allowed to testify to opinions without having firsthand knowledge, so long as it is permissible in their discipline." Trujillo v. Cty. of Los Angeles, 751 F.App'x 968, 970-971 (9th Cir. 2018) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993) ("[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.")  The Court also agrees that Plaintiff has not established a foundation for his request to exclude Defendant's medical testimony that is supported by the record.

Plaintiff's motion to exclude Defendant's exhibits and medical records, under Federal Rule of Evidence 901, should not be granted.  Plaintiff moves to exclude medical records, exhibits AGO 12, 17, and 23 attached to Defendant Zepp's and Dr. Feinberg's declarations. (ECF No. 55-8 at 21, 26, 32.)  Defendant argues and the Court agrees that Plaintiff's disagreement with the content of the records, which have been properly authenticated, is not a basis to exclude them.

Plaintiff requests equitable estoppel and a finding of unclean hands.  In the Ninth Circuit, the plaintiff carries the burden of proving the following elements of equitable estoppel: (1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance. Bolt v. United States, 944 F.2d 603, 609 (9th Cir. 1991).  Unclean hands typically "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165 (9th Cir. 1989). Defendant argues that Plaintiff has not shown wrongdoing that Plaintiff relied on, or evidence of fraud on the Court by Defendant, which requires a "grave miscarriage of justice," see Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003).

There is no basis for Rule 11 sanctions.  Plaintiff did not show exceptional circumstances including improper purpose, unlawfulness, and lack of evidentiary support.  Nor did Plaintiff show that Defendant's entire motion is frivolous, or that Defendant misrepresented facts or misstated the law in his cross motion for summary judgment and opposition to Plaintiff's motion for summary judgment.  Thus, Plaintiff's Rule 11 motion must be denied.

### C. **Summary**

In summary, the Court finds that Plaintiff's surreply has brought a large number of futile motions for sanctions, which when stripped down to their bare essentials are little more than a dispute over the facts, which the court will assess in whether to grant or deny the respective summary judgment motions.  To the extent that Plaintiff seeks to limit the presentation of Defendant's evidence, perhaps a more proper vehicle to this is by way of a motion *in limine*.

Based on the foregoing, Plaintiff's surreply/motion for a finding of perjury and sanctions, filed on December 15, 2022, should be denied.

## IV.    SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the court must consider each party's evidence.  Johnson v. Poway Unified School Dist., 658 F.3d 954, 960 (9th Cir. 2011), cert.

denied, 132 S.Ct. 1807.  In reviewing cross-motions for summary judgment, a court is required to consider each motion on its own merits.  <u>Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001). This requires a court to review the evidence submitted by both parties in support of their motions for summary judgment before ruling on either motion. <u>Id.</u> The court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  <u>A.C.L.U. of Nev. v. City of Las Vegas</u>, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted) (quoting <u>NextWave Marine Sys., Inc. v. M/V Nelida</u>, 488 F. Supp. 3d 1004, 1008 (D. Or. 2020)).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).  Plaintiff "must establish beyond controversy every essential element" of each claim on which summary judgment is sought.  <u>Longoria v. Kodiak Concepts LLC</u>, 527 F. Supp. 3d 1085, 1094 (D. Ariz. 2021) (quoting <u>S. California Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 888 (9th Cir. 2003)).

The party without the burden of persuasion at trial—usually the defendant—is entitled to summary judgment where it establishes that the party with the burden of persuasion will be unable to prove at least one element of its claim in light of the undisputed facts.  <u>Id.</u> (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-33, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  <u>In re Oracle Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010).  This distinction reflects that the burden is ultimately on the proponent of each claim to prove it.  <u>Longoria</u>, 527 F. Supp. 3d at 1095 (citing <u>Celotex Corp.</u>, 477 U.S. at 322-33 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").  <u>Id.</u>

At the summary judgment stage, a judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Patrick v. Costa Mesa Police Dep't (C.D. Cal. July 1, 2020, No. SA CV 16-318-PLA) 2020 U.S.Dist.LEXIS 118101, at *11  (quoting Tolan v. Cotton, 572 U.S. 650, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) (quoting Anderson, 477 U.S. at 249).  Accordingly, "a court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence, as those are functions reserved for the jury." Id. (quoting Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017) (internal citation, quotation marks, and alterations omitted); Soremekun, 509 F.3d at 984.  The Court must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. Thompson v. Gomez, No. 1:18-cv-00125-JLT-SAB (PC) (E.D. Cal. Mar. 23, 2022), 2022 U.S.Dist.LEXIS 52763, at *20; (citing Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted)).  The Court determines only whether there is a genuine issue for trial.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## V.    SUMMARY OF PLAINTIFF'S ALLEGATIONS AT ISSUE[1] [2]

---

[1] Plaintiff's First Amended Complaint is verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

[2] On June 30, 2021, the Ninth Circuit Court of Appeals ordered that this case proceed with Plaintiff's First Amended Complaint against defendant Dr. Andrew Zepp for failure to provide sufficient pain medication as Plaintiff awaited surgery from February 5, 2019 to March 25, 2019, in

Plaintiff is presently incarcerated at California State Prison in Corcoran, California. The events at issue in the First Amended Complaint allegedly occurred when Plaintiff was incarcerated at Kern Valley State Prison (KVSP) in Delano, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). The sole Defendant in this case is Dr. Andrew Zepp ("Defendant").

A summary of Plaintiff's allegations follows:

**Plaintiff's First Cyst**

In April 2016, Plaintiff started having pain in his left testicle. (FAC, ECF No. 14 at 6 ¶31.) A self-examination revealed a lump on the top left testicle around the tubes. (Id.) Plaintiff alleges that the pain associated with the cyst was like a kick to the testicles which radiated into the left abdominal area. (Id. ¶34.) Plaintiff lost sleep, had difficulty walking, and was in constant pain. (Id.) On August 4, 2016, the cyst was surgically removed by urologist Dr. Griffin. (Id. ¶33.)

**Plaintiff's Second Cyst**

In June 2017, the pain in his left testicle returned, a self-examination revealed the cyst had returned, and Plaintiff's pain level was about a 1 out of 10. (Id. ¶35.) As with the first cyst, the cyst pain level for the second cyst increased in intensity every month reaching a level of about 6 to 7 out of 10 in January 2018. (Id. ¶36.) Plaintiff was scheduled for surgery to remove the second cyst in March 2018. (Id. ¶37.)

After numerous requests for pain medication, on January 4, 2019, Dr. Zepp prescribed Tylenol 3 with codeine which reduced Plaintiff's pain level from 7 to 1. (Id. ¶38.) Plaintiff saw Dr. Zepp again on February 5, **2019**,[3] and requested he renew the Tylenol 3 prescription until

violation of the Eighth Amendment. (ECF No. 37.) Accordingly, the Court's summary of the allegations at issue, found above, only includes those allegations in the First Amended Complaint upon which this case now proceeds.

[3] Plaintiff's First Amended Complaint alleges that "Plaintiff saw Dr. Zepp on February 5, **2018** and requested Dr. Zepp renew the Tylenol #3 until Plaintiff had surgery in March **2018**." (ECF No. 14 at 7 ¶40.) However, it appears from the timeline in the FAC that Plaintiff meant February 5, **2019** and March **2019**. Plaintiff's surgery removing this cyst was performed on March 25, **2019**. (Id. ¶43.)

Plaintiff had surgery. Dr. Zepp replied, "You want to 602 (appeal) me? I am not renewing. I told you this is temporary." (<u>Id.</u> at 7 ¶¶40-41.)

From February 5, 2019 to March 25, 2019, when the cyst was surgically removed, Plaintiff's pain level was about a 7 to 8 out of 10 (like a kick to the testicles that radiated into lower left abdomen area) that caused pain when walking, caused difficulty in sleeping, and interfered with Plaintiff's daily function. (<u>Id.</u> ¶42.) On February 5, 2019, Plaintiff filed an inmate appeal for the failure to provide adequate medical treatment, cruel and unusual punishment, and retaliation. (<u>Id.</u> ¶43.)

After the surgery, on March 25, 2019, Plaintiff's pain level went from a 7 to 0. (<u>Id.</u> ¶44.) Plaintiff was then prescribed Tylenol #3 for "post-op" pain, but Plaintiff refused the medication because he was not in pain. (<u>Id.</u>)

Plaintiff requests monetary damages, declaratory relief, injunctive relief, and costs of litigation.

## VI.  PLAINTIFF'S MEDICAL CLAIM – LEGAL STANDARD

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (<em>en banc</em>) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u> Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to

further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

## VII.   UNDISPUTED FACTS/OBJECTIONS

The parties tendered voluminous facts and evidence in this case. The Court has reviewed and considered all the facts and evidence in support of same. However, the Court has not discussed every fact tendered by the parties, only those that are most material to the Court's findings.

### A.   Objections to the Facts

Both parties object to some of the other party's facts as hearsay. In some situations, hearsay may be considered on summary judgment. See Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003) (citing Hughes v. United States, 953 F.2d 531, 543 (9th Cir. 1992) (litigation

adviser's affidavit may be considered on summary judgment despite hearsay and best evidence rule objections; the facts underlying the affidavit are of the type that would be admissible as evidence even though the affidavit itself might not be admissible)).

Defendant also objects to some of Plaintiff's evidence because Plaintiff lacks expertise to offer opinions regarding matters of medical judgment under Federal Rules of Evidence 602 and 701. However, Plaintiff may testify to what he personally experienced or knew.  As a non-expert witness under Rule 701, Plaintiff may testify as to what he saw or felt relating to his medical needs or condition but may not testify as to any medical matter which requires scientific, technical, or other specialized knowledge.  Asberry v. Relevante, No. 116CV01741JLTHBKPC, 2023 WL 2563243, at *5 (E.D. Cal. Mar. 17, 2023) (citing see Gilmore v. Lockard, 2017 WL 615155, at *2 (E.D. Cal. Feb. 14, 2017)).  He may also testify as to how *he believes or opines* his injuries were caused. Id. (citing see Sienze v. Kutz, 2019 WL 1332184, at *3 (E.D. Cal. Mar. 25, 2019) ("Plaintiff may not testify as to a future prognosis, which would require expert medical opinion, but he may testify as to his direct perceptions of pain, function of his own body parts, his own mental perceptions, and his perceived causes of those ailments")).  In addition, Plaintiff may testify as to *his understanding* of any medical diagnosis he received from a medical professional.  Id.

The below statement of facts is derived from the parties' statements of undisputed facts, oppositions to the statements of undisputed facts, the allegations in Plaintiff's First Amended Complaint, and all declarations and other records submitted on the record and referred to by the parties in their filings for the court's consideration on this summary judgment motion.

The Court notes that Plaintiff purportedly "disputes" many facts by raising tangential factual issues. Thus, to the extent the Court finds such "disputes" to be non-existent, it will simply treat the fact as undisputed without further explanation.

The Court has reviewed the parties' objections to the evidence submitted. Except as otherwise noted, any objections that are inconsistent with the Court's ruling are OVERRULED. All other objections are SUSTAINED.

**B.     The Parties' Undisputed Facts**

14

On June 9, 2022, Plaintiff filed a Statement of forty-seven Undisputed Facts for Motion for Summary Judgment.  (ECF No. 53 at 4-16.)  On June 27, 2022, Defendant filed a Statement of thirty-two Undisputed Facts in Support of Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment.  (ECF No. 55-2.)  Also on June 27, 2022, Defendant filed a Response and Objections to Plaintiff's Statement of Undisputed Facts in Support of Motion for Summary Judgment.  (ECF No. 55-3.)  On September 12, 2022, Plaintiff filed a Response to Defendant's Responses to Plaintiff's Undisputed Facts #1-47 (ECF No. 69 at 91-95); Plaintiff's Second Statement of Undisputed Facts #48-139 (ECF No. 69 at 120-136); and a Response to Defendant's Statement of Undisputed Facts #1-32 in Support of Cross Motion (ECF No. 69 at 145-154).  On October 14, 2022, Defendant filed a Reply to Plaintiff's Second Set of Statements of Undisputed Facts in Opposition/Reply to Defendant's Cross motion/Opposition for Summary Judgment.  (ECF No. 75-1.)

**C.   Findings**

After review of the undisputed facts and responses submitted by the Parties, the facts set forth below are determined by the Court to be undisputed.

### 1.   Plaintiff, Stanley Solvey

Plaintiff is a state prisoner within the custody of the California Department of Corrections and Rehabilitation (CDCR), and was incarcerated at Kern Valley State Prison (KVSP) in Delano, California, from November 14, 2015 to June 29, 2021.  (Pltf's Decl., ECF No. 53 ¶¶5, 6; Deft's Answer, ECF No. 44 ¶3; Singer Decl., ECF No. 55-6 at 8-9, Ex. A., Plaintiff's Depo. 12:22-13:3.)

### 2.   Defendant, Dr. Andrew Zepp

Defendant Dr. Andrew Zepp is a primary care physician and surgeon employed by California Correctional Health Care Services (CCHCS), a state agency, at KVSP and has been employed at KVSP since July 24, 2017.   (Pltf's Decl., ECF No. 53 at 26 ¶56; Pltf's Interrog., ECF No. 53 at 129  #1; Deft's Answer, ECF No. 44 ¶7; First Amended Complaint (FAC), ECF No. 14 at 4 ¶21, 5 ¶29; Zepp Decl., ECF No. 55-7 ¶ 1.)  Defendant Zepp was Plaintiff's primary care doctor at KVSP for a period of time.  (Deft's Answer, ECF No 44 at ¶21.)  While Plaintiff

was Dr. Zepp's patient, Dr. Zepp treated Plaintiff for several conditions including but not limited to diabetes, kidney stones, seizure, and a left epididymal cyst, referring him to specialists where medically indicated. (ECF No. 55-7 at 2.)  During the time period at issue -- February 5, 2019 to March 25, 2019 -- Dr. Zepp worked at KVSP and was acting under color of state law. (Deft's Answer, ECF No. 44 ¶29; FAC, ECF No. 14 at 4 ¶29)  His job duties at KVSP included examining patients, diagnosing their illness, and prescribing and administering medical treatment. (Pltf's Interrog., ECF No. 53 at 129 #1.)

### 3.   Plaintiff's First Cyst

In mid-April 2016, Plaintiff began to have pain in his left testicle that radiated into his lower left abdomen.  (Pltf's Decl., ECF No. 53 at 19 ¶13 and Exh. 1 (p. 41); FAC, ECF No. 14 at 6 ¶31.)  On August 4, 2016, the epididymal cyst on Plaintiff's left testicle was surgically removed. (PUF #10 (Pltf's Decl., ECF No. 53 at 24 ¶47 and Exh. 10 (p. 60); FAC, ECF No. 14 at 6 ¶33; Feinberg Decl., ECF No. 55-8 ¶ 9 fn.1.)

### 4.   Plaintiff's Second Cyst

Defendant Dr. Zepp knew there was a large epididymal cyst on Plaintiff's left testicle. (Pltf's Decl. ECF No. 53 at 28 ¶66 and Exhs. 15-16 (p. 71-74)).  Defendant Zepp placed an order for ultrasound on Plaintiff's testicle on December 13, 2017.  (Id., Exh. 15 (p. 72)).

On March 15, 2018, at Kern Valley State Prison Central Medical Clinic an ultrasound was performed, on the Doctor's order of Defendant Dr. Zepp, that indicates "A 3.4 x 1.9 x 2.7 cm epididymal cyst present on the left." "Impression: 1. Large left epididymal cyst."  (Exh. 16 to Pltf's Decl. ECF No. 53 at 74.)  This ultrasound report was provided to Defendant Dr. Zepp. (Id.)

On April 11, 2018, Plaintiff saw urologist, Dr. McBride, for a follow-up medical appointment after his scrotal ultrasound on March 15, 2018.  (Zepp Decl., ECF No. 55-7 ¶ 7 and Ex. A at AGO 1-2 (p. 9-10); Feinberg Decl., ECF No. 55-8 ¶ 9 and Exh. B at AGO 1-2 (p. 10-11).

On January 2, 2019, Plaintiff went "man down" in regard to intolerable pain from what was diagnosed as a second epididymal cyst.  (Pltf's Decl., ECF No. 53 at 31 ¶84, Exh. #19-21

(pp. 80-85). He saw nursing staff at the Treatment and Triage Area (TTA) which functions similar to an urgent care within KVSP. (Zepp Decl., ECF No. 55-7 at 3 ¶ 8, Ex. A at AGO 3-4 (pp. 11-12); Feinberg Decl., ECF No. 55-8 ¶ 10, Ex. B at AGO 3-4 (pp. 42- 43). He complained of left-sided testicular pain. (Id.) Nursing staff contacted Dr. Ulit, a physician and surgeon at KVSP, who placed orders for Plaintiff to be transported to Delano Regional Medical Center (DRMC) for further evaluation. (Zepp Decl., ECF No. 55-7 ¶ 8, Ex. A at AGO 3-4 (pp. 11-12); Feinberg Decl. ECF No. 55-8 ¶ 10, Ex. B at AGO 3-4 (pp. 12-13). Plaintiff underwent a scrotal ultrasound at DRMC that revealed an incidental left epididymal cyst and an otherwise normal bilateral testicular exam. (Pltf's Decl., ECF No. 53 at 31  ¶¶85-87, Exh. #19-21 (pp. 80-85); Zepp Decl., ECF No. 55-7 ¶ 8, Ex. A at AGO 5-9 (pp. 13-17); Feinberg Decl., ECF No. 55-8 ¶ 11, Ex. B at AGO 5-9 (pp. 14-18). Plaintiff reported to the emergency room clinician a complaint of left testicular pain that had worsened over the past month. (Zepp Decl., ECF No. 55-7 ¶ 9, Exh. A at AGO 5-9 (pp. 14-17; Feinberg Decl., ECF No. 55-8 ¶ 11, Ex. B at AGO 5-9 (pp. 13-18). The emergency room clinician noted no acute distress and discharged Plaintiff back to KVSP. (Id.) The emergency room clinician did not make a discharge recommendation for pain medication. (Id.)

On January 4, 2019, Plaintiff was seen by Defendant Doctor Zepp at the KVSP Medical Clinic for a follow-up after his visit to DRMC. (Pltf's Interrog. #4, ECF No. 53 at 131; FAC, ECF No. 14 at 6 ¶38.); (Zepp Decl., ECF No. 55-7 ¶ 10, Ex. A at AGO 10-11 pp. 18-19; Feinberg Decl., ECF No. 55-8 ¶ 12, Ex. B at AGO 10-11 (pp. 19-20). Plaintiff reported pain in the area of the left epididymis and requested that the entire testicle be removed. (Id.) (Pltf's Interrog. #4, ECF No. 53 at 131; Zepp Decl., ECF No. 55-7 ¶ 10, Ex. A at AGO 10-11 (pp. 18-19); Feinberg Decl., ECF No. 55-8 ¶ 12, Ex. B at AGO 10-11 (pp. 19-20). Defendant Zepp conducted a physical exam on Plaintiff. (Id.) Dr. Zepp reviewed Plaintiff's medical history noting he last saw urologist Dr. McBride in April 2018, for evaluation. (Zepp Decl., ECF No. 55-7 at 3 ¶ 10, Ex. A at AGO 10-11 (pp. 18-19); Feinberg Decl., ECF No. 55-8 ¶ 12, Ex. B at AGO 10-11 (pp. 19-20). Dr. Zepp placed orders to have Plaintiff return to Dr. McBride for management of his reported left hemiscrotal pain. (Id.) In addition, given Plaintiff's recent return from DRMC, Dr.

Zepp prescribed Tylenol with codeine (Tylenol #3 or T3) to take twice daily when necessary for pain, for thirty days.   (Pltf's Decl., ECF No. 53 at 31-32 ¶88; Deft's Answer, ECF No. 44 at 119 ¶38; FAC, ECF No. 14  ¶38; Zepp Decl., ECF No. 55-7 at 3 ¶ 10, Ex. A at AGO 10-11 (pp. 18-19); Feinberg Decl., ECF No. 55-8 ¶ 12, Ex. B at AGO 10-11 (pp. 19-20).  Tylenol with codeine is an opioid, and Dr. Zepp emphasized the temporary nature of the prescription because based on his medical training and experience, a longer term prescription can lead to tolerance and dependence.  (Zepp Decl., ECF No. 55-7 ¶10.)  Dr. Zepp's January 4, 2019 progress note stated, "T3 twice a day when necessary for 30 days.  I've emphasized this is temporary.  I'm referring him back to Dr. McBride for management of his hemiscrotal pain."  (Exh. AGO 000010 to Zepp Decl., ECF No. 55-7 at 18.)  On January 4, 2019, Defendant Dr. Zepp was unable to palpate a distinct epididymal cyst. (Pltf's Interrog. #4, ECF No. 53 at 131).  Plaintiff declared that his pain associated with the second epididymal cyst was reduced when he was taking Tylenol #3 with Codeine.  (Pltf's Decl., ECF No. 53 at 32 ¶89; FAC, ECF No. 14 at 6-7 ¶38.)

On January 22, 2019, RN Johnson noted: "I/P current only T3 for the cyst, but states that is no longer working and he is developing 'a tolerance' and requests different pain medications." (Zepp Decl., ECF No. 55-7 ¶ 11, Ex. A at AGO 12 (p. 20).  Plaintiff disputes saying this. (Doc 69, pg 13, paragraph 67).

On January 27, 2019, Plaintiff submitted a "health care services request form," CDCR Form 7362, requesting that Defendant Dr. Zepp renew the Tylenol with codeine for 30 more days.  (Pltf's Decl., ECF No. 53 at 32 ¶90 and Exh. 22 (p. 87)).  Plaintiff did not indicate on the Form 7362 that the T-3 was no longer working or that he was developing a tolerance.   (Pltf's Exh. 22, ECF No. 53 at 87; Zepp Decl., ECF No. 55-7  Exh. A, AGO 12 (p. 20).  Nor did he request a different pain medication on the form (7362).  (Id.)

On January 28, 2019, Nurse (RN) Johnson received the 7362 "request" form and made notes on the form. (Exh A to Zepp Decl., ECF No. 55-7, AGO 12 (p. 20).  Dr. Zepp also made a note on the form.  (Pltf's Exh. 22, ECF No. 53 at 87).  RN Johnson noted that Plaintiff ambulated with a steady gait, got on and off the exam table without difficulty, and had no difficulty breathing.  (Zepp Decl., ECF No. 55-7 ¶ 11, Ex. A at AGO 12 (p. 20).

On February 3, 2019, Plaintiff's Tylenol #3 pain medication expired.  (Pltf's Exh. #23, ECF No. 53 at 89.)  Plaintiff submitted another "Health Care Services Request Form" 7362 asking Defendant Dr. Zepp to renew the Tylenol #3 prescription for 30 more days.  (Pltf's Decl., ECF No. 53 at 32 ¶92 and Exh.#23 (p. 89).))

Defendant Dr. Zepp was contacted by the RN concerning Plaintiff's request to renew the Tylenol #3 with Codeine when the prescription expired on February 4, 2019. (Pltf's Decl., ECF No. 53 at 32 ¶91, Exh. #22, 24 (pp. 87, 91)).  Defendant Zepp made a note on the Medical "Request" Form: "No, please see my note on 1-4-19." "Z".  (Exh. 22 to Pltf's Decl., ECF No. 53 at 87.)

On February 5, 2019, Plaintiff was seen by Defendant Dr. Zepp for multiple issues including the left epididymal cyst. (Pltf's Decl., ECF No. 53 at 32-33 ¶¶93, 97, Exh. #24; Zepp Decl., ECF No. 55-7 at 4 ¶ 12, Ex. A at AGO 13-14 (pp. 21-22); Feinberg Decl., ECF No. 55-8 at 4 ¶ 13, Ex. B at AGO 13- 14 (pp. 22-23).  Plaintiff reported pain regarding the cyst.  (Zepp Decl., ECF No. 55-7 at 4 ¶ 12, Ex. A at AGO 13-14 (pp. 21-22); Feinberg Decl., ECF No. 55-8 at 4 ¶ 13, Ex. B at AGO 13- 14 (pp. 22-23).  Defendant Dr. Zepp admits seeing Plaintiff on February 5, 2019 but he did not renew Plaintiff's Tylenol #3 prescription on that date.  (Def't's Resp to Pltf's UF #28, ECF No. 55-3 at 9-10.)  Defendant Dr. Zepp replied to Plaintiff's request to renew, "you want to 602 me, I am not renewing."  (Pltf's Decl., ECF No. 53 at 33 ¶101; FAC at 7 ¶41.)  On that date, Plaintiff did not indicate to Dr. Zepp that the T-3 pain medication was not working or that he was developing a 'tolerance,' nor did Plaintiff request a different pain medication.  (Zepp Decl, ECF No. 55-7, Ex. A, AGO 13-14 (pp. 21-22); Pltf's Decl., ECF No. 69 at 13 ¶67.)  On February 5, 2019, after Defendant Zepp's comment about Plaintiff 602-ing him, Plaintiff stated, "I am entitled to adequate medical treatment."  (Pltf's Decl., ECF No. 53 at 33 ¶102.)

After the expiration of the prescription for Tylenol #3 with Codeine, Plaintiff's pain level increased.  (Pltf's Decl., ECF No. 53 at 34 ¶105.)  After the visit with Dr. Zepp, Plaintiff filed the third Grievance/Appeal CDCR Form 602 against Defendant Dr. Zepp in Appeal Log # KVSP HC-19000128.  (FAC, ECF No. 14 at 24 Exh. A.)

From February 5, 2019 until March 25, 2019, Plaintiff suffered excruciating pain in the left testicle that radiated into the lower left abdomen.  (Pltf's Decl., ECF No. 53 at 34-35 ¶¶105, 113; FAC, ECF No. 14 at 7 ¶42.)

Between February 6, 2019 and Plaintiff's surgery on March 25, 2019 to remove his left epididymal cyst, Plaintiff had several medical visits, but none of those visits were with Dr. Zepp.  (Singer Decl., ECF No. 55-6 Ex. A., Plaintiff Depo. 34:7-11 (p. 12); Zepp Decl., ECF No. 55-7 at 4-5 ¶¶ 13-20, Ex. A at AGO 17-24 (pp. 25-32.), 26-27 (pp. 34-35), 29-36 (pp. 37-44), 38-61 (pp. 36-69); Feinberg Decl., ECF No. 55-8 at 4-6 ¶¶14, 16, 18, 20, 22-25, 28, Ex. B at AGO 15 (p. 24), 17-24 (pp. 26-33), 26-27 (pp. 35-36), 29-36 (pp. 38-45), 38-61 (pp. 47-70).

**Plaintiff does not dispute that he had a "supply" of pain medication available to him during part of the relevant time frame**.  (Singer Decl., ECF No. 55-6 at 13-14, Depo. 35:6-36:25; Zepp Decl., ECF No. 55-7 at 4-5 ¶¶ 15, 17, 18, Ex. A at AGO 18, 23 (pp. 26, 31), AGO 35 (p. 44) AGO 46-47 (pp. 54-55); Feinberg Decl., ECF No. 55-8 at 4-6 ¶¶ 16, 20, 22, 28, Ex. B at AGO 18 (p. 27), 23 (p. 32), 36 (p. 45), 46-47 (p. 55-56).  **For more on this point see the Court's discussion on pages  37 and 38 of this order.**

On February 20, 2019, Plaintiff was seen by Urologist Dr. Albert McBride, who noted in his report: "no scrotal tenderness."  (Feinberg Decl., ECF No. 55-8 at 5 ¶18, Ex. B at AGO 26-27 (pp. 35-36); Zepp Decl., ECF No. 55-7, Exh. A AGO 26-27 (pp. 34-35).)  On February 20, 2019, Dr. McBride noted that Plaintiff described the left epididymal cyst as painful.  (Id.)  He recommended removal of the cyst but did not recommend pain medication.  (Id.)  Dr. McBride indicated that he would schedule Plaintiff for a second surgery to excise the cyst that Plaintiff described as painful.  (Pltf's Decl., ECF No. 53 at 34 ¶108, Exh. 26 (p. 95); Zepp Decl., ECF No. 55-7 at 5 ¶ 16, Ex. A at AGO 26-27 (pp. 34-35); Feinberg Decl., ECF No. 55-8 ¶ 18, Ex. B at AGO 26- 27 (pp. 35-36).  Dr. McBride stated that he could not prescribe pain medication to "C.D.C.R." prison inmates, that only the prison's doctor could do so.  (Pltf's Decl., ECF No. 53 at 34 ¶109.) On February 20, 2019, Plaintiff, returning from consult with Dr. McBride, submitted a "Health Care Request Form," 7362, indicating multiple medical issues, including "epididymal cyst, left testicle, need pain meds."  (Pltf's Decl., ECF No. 53 at 35 ¶111, Exh. #27 (p. 98)).

**Plaintiff saw RN Blankenship two days later on February 22, 2019**. (Pltf's Decl., ECF No. 53 at 35 ¶112; Zepp Decl., ECF No. 55-7 at 5 ¶ 17, Ex. A at AGO 28-36 (pp. 36-44); Feinberg Decl., ECF No. 55-8 at 5 ¶¶ 19-20, Ex. B at AGO 28-36 (pp. 37-45)).   Plaintiff requested compression stockings, orthopedic shoes, pain medication for his epididymal cyst, and a follow up with a primary care physician to review urology recommendations. (Zepp Decl., ECF No. 55-7 at 5 ¶ 17, Ex. A at AGO 28-36 (pp. 36-44); Feinberg Decl., ECF No. 55-8 at 5 ¶¶ 19-20, Ex. B at AGO 28-36 (pp. 37-45)).  **RN Blankenship consulted with Dr. Ulit who gave orders for Plaintiff to receive regular Tylenol to take as needed for pain.** (Id.; Pltf's Decl., ECF No. 53 at 35 ¶112.)  **RN Blankenship called the doctor who, over the phone, prescribed regular Tylenol 325 mg**. (Pltf's Decl., ECF No. 53 at 35 ¶112.)  RN Blankenship also informed Plaintiff of orders for an appointment with a primary care physician to discuss the urologist's recommendations.  (Id.; Zepp Decl., ECF No. 55-7 at 5 ¶ 17, Ex. A at AGO 28-36 (pp. 36-44); Feinberg Decl., ECF No. 55-8 at 5 ¶¶ 19-20, Ex. B at AGO 28-36 (pp. 37-45)).  Plaintiff took the Tylenol 325 mg as prescribed but experienced more pain associated with the epididymal cyst. (Pltf's Decl., ECF No. 53 at 35 ¶¶113, 114.)

On March 1, 2019, Plaintiff submitted another "Health Care Services Request Form" CDCR Form 7362 indicating "I have a cyst on testicle, scheduled for surgery on regular Tylenol, not effective, struggling to walk to med line. Need stronger pain meds until surgery date. Please. Taking NSAID's too OTC."  (Id., Exh. 28, ECF No. 53 at 100).

**On March 4, 2019, Plaintiff saw RN Davis. (Zepp Decl., ECF No. 55-7  at 5 ¶ 18 and Exh. A at AGO 38-47; Feinberg Decl., ECF No. 55-8 ¶ 22 and Exh. B at AGO 38- 47 (pp. 46-55).  He reported a painful testicular cyst. (Id.)  RN Davis consulted with Dr. Sao who prescribed Ibuprofen 400mg 3x daily for only 10 days**. (until 3-14-19).  (Id.)   On March 3rd or 4th, 2019, Plaintiff was seen by an unknown R.N. who called an unknown doctor. (Pltf's Decl., ECF No. 53 at 35 ¶115; Zepp Decl., ECF No. 55-7 at 5 ¶ 18 and Exh. A at AGO 38-47 (pp. 46-55; Feinberg Decl., ECF No. 55-8 at 5 ¶ 22 and , Ex. B at AGO 38- 47 (pp. 45-56). The RN informed Plaintiff that the doctor would not prescribe a pain medication more effective than the Tylenol 325 mg.  (Pltf's Decl., ECF No. 53 at 35 ¶115.)

On March 25, 2019, at a hospital in Bakersfield, California, urologist Dr. McBride surgically removed Plaintiff's second left epididymal cyst.  (Pltf's Decl., ECF No. 53 at 36 ¶¶116-120 and Exh. 29 (pp. 102-103); Deft's Answer, ECF No. 44 at 120 ¶ 41; Zepp Decl., ECF No. 55-7 ¶ 21, Ex. A at AGO 58-61 (pp. 66-69); Feinberg Decl., ECF No. 55-8 ¶ 25, Ex. B at AGO 58- 61 (pp. 67-70).  Discharge instructions included the recommendation to apply an ice pack to the scrotum for the next forty-eight hours and to follow-up with Dr. McBride in one week.  (Id.)

## VIII.   DEFENDANT DR. ZEPP' POSITION

Defendant Dr. Zepp argues that the undisputed facts show that he provided Plaintiff with medically appropriate care and did not knowingly disregard an excessive risk to Plaintiff's health.  Defendant argues that Plaintiff's disagreement with  the course of treatment by Dr. Zepp does not amount to deliberate indifference under the Eighth Amendment.  Specifically, Plaintiff alleges that Dr. Zepp declined to renew a prescription for Tylenol with codeine, thus causing Plaintiff to suffer pain between February 5, 2019 and March 25, 2019, as he awaited surgery to remove an epididymal cyst.

### A.   There Is No Evidence That Dr. Zepp Acted With Deliberate Indifference

Dr. Zepp did not see Plaintiff as a patient during the relevant time period of February 5, 2019 and March 25, 2019, but Dr. Zepp did examine Plaintiff, refer him to medical specialists for pain, and prescribe medication for him.  Dr. Zepp did not renew Plaintiff's prescription for Tylenol with codeine because it was not medically indicated, and long term use of opioids can lead to tolerance and dependence.

On January 4, 2019, Dr. Zepp examined Plaintiff after Plaintiff returned from DRMC where he was evaluated for left testicular pain, and Plaintiff seemed most tender in the spermatic cord region but Dr. Zepp found no testicular torsion, infection, swelling, erythema, or tenderness to palpation.  Finding that Plaintiff had been treated previously by Urologist Dr. McBride, for a left epididymal cyst, Dr. Zepp referred Plaintiff to Dr. McBride for a follow-up.  Dr. Zepp also prescribed Tylenol with codeine twice a day when necessary for 30 days, emphasizing the temporary nature of the prescription.  On January 22, 2019, Plaintiff reported to RN Johnson his

tolerance to Tylenol with codeine and requested different pain medications.  Plaintiff disputes saying this.  (ECF No. 69 at 13 ¶67).

After January 4, 2019, Dr. Zepp saw Plaintiff once, on February 5, 2019, for multiple issues including his cyst, but Plaintiff did not appear to be in distress.  Because Plaintiff's vitals did not objectively indicate pain, he had other non-opioid medication available, and he had a urology consult pending, Dr. Zepp determined not to renew the Tylenol with codeine at that time.

Dr. Zepp did not see Plaintiff from February 6, 2019 to March 25, 2019, but he ordered requests for consults with doctors for Plaintiff's other medical complaints, and those doctors did not recommend pain medication except Tylenol and Ibuprofen, not Tylenol with codeine.  Plaintiff's disagreement with Dr. Zepp's medical judgment does not meet the standard for deliberate indifference.  Dr. Zepp referred Plaintiff to a specialist who evaluated Plaintiff on February 20, 2019 and removed Plaintiff's cyst on March 25, 2019.

**B.**     **There Is No Evidence That Dr. Zepp's Treatment Plan Was Medically Unacceptable Under the Circumstances**

Plaintiff presents no evidence that in the opinion of a medical professional, Tylenol with codeine was indicated following its cessation.  No other doctors prescribed Tylenol with codeine to plaintiff for his cyst between February 5, 2019 and March 25, 2019.  Dr. Ulit and Dr. Sao prescribed only Tylenol and Ibuprofen, and Dr. McBride prescribed no pain medication.  Before removal of his first and third cysts, Plaintiff was not prescribed any opioids.

**C.**     **There Is No Evidence That Dr. Zepp Consciously Disregarded an Excessive Risk To Plaintiff's Health**

There is no evidence that Dr. Zepp consciously disregarded an excessive risk to Plaintiff's health by not renewing Plaintiff's prescription for Tylenol with codeine.  The record shows that Dr. Zepp, KVSP medical professionals and outside medical professionals regularly responded to Plaintiff's complaints, including his complaint of testicular pain.  Defendant argues that even if a course of treatment is ineffective, a claim for deliberate indifference is not established unless the medical professional's conduct was medically unacceptable and chosen in conscious disregard to Plaintiff's health.   After February 5, 2019, Plaintiff had several medical

appointments, but none of them were with Dr. Zepp, and therefore Dr. Zepp cannot be deliberately indifferent to Plaintiff's medical needs during that time period.   Further, other medical professionals who did see Plaintiff during that time period did not find Tylenol 3 to be medically indicated.   The record shows that Dr. Zepp addressed Plaintiff's pain by referring him to a specialist, and based on his objective observations, training, and experience, did not renew Tylenol with codeine, an opioid which can lead to tolerance and dependence, when Plaintiff had other pain relievers available.   Thus, Plaintiff's assertion that regular Tylenol and Ibuprofen were ineffective in treating his pain does not preclude summary judgment in favor of Dr. Zepp.

> **D.**      **Plaintiff's Disagreement with Dr. Zepp's Course Of Treatment Is a Difference Of Opinion and as such is not an actionable constitutional claim**

Defendant argues that Plaintiff's dissatisfaction with Dr. Zepp's treatment plan is a difference of opinion, not an actionable Eighth Amendment claim, because a difference of opinion between an inmate and medical professional does not give rise to a claim for deliberate indifference.   A disagreement about medication does not establish a constitutional violation. Plaintiff does not have the right to dictate what medications he is prescribed.   Therefore, Defendants conclude that summary judgment must be granted in favor of Dr. Zepp and Plaintiff's motion for summary judgment should be denied.

## IX.    PLAINTIFF'S POSITION

Plaintiff argues that Dr. Zepp knew about Plaintiff's serious medical condition.   Dr. Zepp made numerous orders concerning the epididymal cyst from December 13, 2017 until excision of the cyst on March 25, 2019.   Dr. Zepp treated Plaintiff's pain from the cyst from January 4, 2019 to February 4, 2019.   However, Dr. Zepp treated Plaintiff's pain for 30 days, then failed to respond to the pain for approximately 50 days from February 5, 2019 to March 25, 2019, when he failed to prescribe sufficient pain medication for Plaintiff while Plaintiff awaited surgery for the painful cyst.

Dr. Zepp admits in his answer that he was acting under color of state law and admits in his response to Plaintiff's interrogatory #6 that he did not renew Plaintiff's pain medication.   This conduct deprived Plaintiff of his rights under the Eighth Amendment.   Plaintiff claims that Dr.

Zepp had extensive knowledge of Plaintiff's medical needs but chose a medically unacceptable course of treatment and refused to prescribe any pain medication for Plaintiff between February 5, 2019 to March 25, 2019.  Plaintiff's facts are simple: he had a serious medical condition that was causing immense pain and required surgery.  Defendant knew about the condition, as Plaintiff suffered the same condition previously.  Dr. Zepp's motives were calloused, malicious, and motivated by revenge and retaliation against Plaintiff.  Plaintiff's condition is described as painful in medical texts.  Defendant received request forms from Plaintiff concerning the painful condition.  Surgery was ordered by the Urologist on February 20, 2019 and performed on March 25, 2019.

On March 15, 2018, an ultrasound was ordered by Dr. Zepp and diagnosed a large epididymal cyst on his left testicle.  Dr. Zepp relies on objective evidence he deems to be indicative of pain as absent when he examines Plaintiff on February 5, 2019, but objective evidence is not necessary and self-reporting may be the only evidence.  Plaintiff reports that Defendant only examined his feet.  Even so, Defendant prescribed Tylenol 3 with codeine to treat Plaintiff's self-reported pain on January 4, 2019.  But then Dr. Zepp denied renewal of the medication on February 5, 2019 to treat Plaintiff's self-reported pain, for lack of objective evidence of pain.

Plaintiff argues that courts have focused on familiar fact patterns when deciding whether a case presents a "Legitimate Medical Judgment" or a "Question of Deliberate Indifference." Direct evidence of deliberate indifference; Denial of delay of access to treatment; Failure to inquire into medical facts; Interference with medical treatment; and Failure to carry out medical orders.  Here, Plaintiff pleads, and Dr. Zepp refuses to renew medication stating, "You want to 602 me?  I am not renewing."  (retaliatory remark)  Dr. Zepp prescribed pain medication on January 4, 2019, knowing the condition was growing and getting progressively worse.  Then he submitted a referral to the Urologist for surgery.  After 30 days of effective pain medication, Dr. Zepp refuses to renew the medication.  This amounted to an unnecessary and wanton infliction of pain.  Plaintiff claims direct evidence of deliberate indifference when Dr. Zepp states, "You want to 602 me?  I am not renewing," and then had Plaintiff removed from the exam room.

In response to Dr. Zepp's and Dr. Feinberg's declarations that Tylenol and Ibuprofen pain medications, at the strength and quantity available to Plaintiff, were "medically acceptable treatment," Plaintiff argues that if he was not receiving those medications, then his treatment was "medically unacceptable."  Plaintiff then claims that he did not have <u>any</u> medications prescribed to him by Dr. Zepp during the relevant time period. Plaintiff suffered substantial harm and prolonged pain and suffering. Plaintiff argues that Dr. Zepp's claim that he "continuously assessed and monitored" does not excuse the failure to provide needed treatment.  It was an ineffective course of treatment when Dr. Zepp prescribed regular Tylenol and Ibuprofen. Plaintiff informed Dr. Zepp that the Tylenol 325 mg. was ineffective numerous times, but Dr. Zepp did not respond reasonably to the risk.

Plaintiff argues that he did not request a specific medication.  To the contrary, he only asked for a renewal of the medication he was already prescribed.  Plaintiff 602'd the failure to prescribe <u>any</u> pain medication, requesting "pain management."

Causation - Plaintiff claims that Dr. Zepp's refusal to prescribe medicine caused infliction of pain from February 5, 2019 to March 25, 2019.

## X.   DEFENDANT'S BURDEN

The Court finds that Defendant has met his burden to demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Here, Plaintiff may not just rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); <u>Id.</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank of Ariz. V. Cities Service Co.</u>, 391 U.S. at 289, 88 S.Ct. 1575 (1968); <u>Strong v. France</u>, 474 F.2d 747, 749 (9th Cir. 1973).

## XI.   TIMELINE OF PLAINTIFF'S MEDICAL CARE AT ISSUE

| ***Plaintiff's First Cyst*** | |
|---|---|
| | |

| (1) | **November 14, 2015** | Plaintiff first incarcerated at KVSP. |
| (2) | **April  2016** | Plaintiff had pain from his first cyst. |
| (3) | **August 4, 2016** | Plaintiff's first cyst was surgically removed. |

| **_Plaintiff's Second Cyst_** | | |
| (4) | **July 14, 2017** | Dr. Zepp became employed at KVSP.  Dr. Zepp was Plaintiff's primary care doctor at KVSP for a period of time.  (ECF No. 44 at 3 ¶ 22.)  While Plaintiff was Dr. Zepp's patient, Dr. Zepp treated Plaintiff for several conditions including but not limited to diabetes, kidney stones, seizure, and a left epididymal cyst, referring him to specialists where medically indicated.  (ECF No. 55-7 at 2.) |
| (5) | **November 29, 2017** | Dr. Zepp wrote an order for urology which mentioned Plaintiff's 3 cm cyst - (Exh. 14, ECF No. 53 at 70.) |
| (6) | **December 13, 2017** | Dr. Zepp wrote an ultrasound order for Plaintiff's left testicle. |
| (7) | **December 28, 2017** | Plaintiff saw Dr. Zepp at KVSP Clinic, reported pain from cyst, Dr. Zepp did not give Plaintiff pain medication, and after the doctor visit, P submitted form 7362 request for pain medication. |
| (8) | **March 15, 2018** | Ultrasound showed second cyst, but Dr. McBride, urologist, says no surgery is needed yet. |
| (9) | **April 11, 2018** | Plaintiff saw urologist Dr. McBride for follow up. |
| (10) | **January 2, 2019** | Plaintiff went "man down" from pain from second cyst (Exh. 19 & 20 ECF No. 53 at 31), Dr. Ulit had Plaintiff |

| | | transported to Delano Regional Medical Center where he had ultrasound showing second cyst, sent back to KVSP. |
|---|---|---|
| (11) | **January 4, 2019** | Plaintiff saw Dr. Zepp for follow up after DRMC visit, Dr. Zepp examined Plaintiff, Plaintiff reported painful left epididymis, Dr. Zepp prescribed Tylenol w. Codeine for 30 days.  Dr. Zepp placed orders to have Plaintiff return to Dr. McBride for management of his reported left hemiscrotal pain.  (Zepp Decl., ECF No. 55-7 at 3 ¶10.) |
| (12) | **January 22, 2019** | Plaintiff saw RN Johnson. |
| (13) | **January 27, 2019** | Plaintiff submitted a written request for Dr. Zepp to renew the Tylenol with Codeine for 30 more days, Dr. Zepp responded in writing that he will "not be renewing." |
| (14) | **January 28, 2019** | Plaintiff saw RN Johnson who contacted Dr. Zepp, Dr. Zepp declined to renew Tylenol with codeine prescription. |
| (15) | **February 3, 2019** | Plaintiff's Tylenol with Codeine prescription expired, Plaintiff submitted another request form 7362 asking Dr. Zepp to renew the prescription until surgery, RN Johnson contacted Dr. Zepp about Plaintiff's request, Dr. Zepp refused to renew it. |
| (16) | **February 5, 2019** | Plaintiff saw Dr. Zepp for multiple issues, Plaintiff reported pain from second cyst, Plaintiff told Zepp the Tylenol with Codeine was highly effective, asked to renew for another 30 days, Dr. Zepp refused to renew the Tylenol with Codeine ("I am not renewing.") |

| ***Days To Surgery and After*** | | |
|---|---|---|
| (17) | **February 6 to March 25, 2019** | Plaintiff had other medical visits but none were with Dr. Zepp. |

| (18) | **February 20, 2019** | Plaintiff saw Dr. McBride, described cyst as painful.  Dr. McBride said he could not prescribe medicine to Plaintiff because he was not Plaintiff's prison doctor. |
|---|---|---|
| (19) | **February 22, 2019** | Plaintiff saw RN Blankenship, requested pain medication for his cyst, RN Blankenship consulted with Dr. Ulit who prescribed Tylenol 325 mg. (Regular Tylenol) for pain.  RN Blankenship informed Plaintiff of orders placed for an appointment with a primary care physician.  (Zepp Decl., ECF No. 55-7 at 5 ¶17.) |
| (20) | **March 1, 2019** | Plaintiff submitted written request for pain medication stronger than regular Tylenol, reported he was struggling to walk to the Med line even though he had over the counter meds. |
| (21) | **March 4, 2019** | Plaintiff saw RN Davis who consulted with Dr. Sao, who prescribed Ibuprofen 400 mg 3X daily for only 10 days, RN informed Plaintiff that Dr. would not prescribe a pain medication more effective than Regular Tylenol. |
| (22) | **March 6, 2019** | Then on March 6, 2019, Plaintiff saw Dr. Ulit for a follow-up regarding several issues including his left epididymal cyst.  Dr. Ulit reviewed Dr. McBride's note and submitted a request for surgery. Dr. Ulit further noted "today he is fine, no acute swelling." (Zepp Decl. ¶ 19, Ex. A at AGO 48-49.) |
| (23) | **March 25, 2019** | Plaintiff had surgery, Dr. McBride removed second cyst. |
| (24) | **March 27, 2019** | After surgery, Plaintiff was prescribed Tylenol with Codeine but found he did not need it because the pain was gone. |

## XII.   DEFENDANT'S PROPOSED EXPERT WITNESS TESTIMONY

Defendant submits Dr. B. Feinberg, M.D.'s declaration in support of his motion for summary judgment.  Dr. Feinberg was asked by the Office of the Attorney General to review the

medical records of Plaintiff Stanley Solvey and to provide a medical expert opinion as to Plaintiff's claim that Defendant Dr. Zepp allegedly failed to provide sufficient pain medication as Plaintiff awaited surgery from February 5, 2019 to March 25, 2019. (Feinberg Decl., ECF No. 55-8 at 3 ¶7.)

> Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based upon sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the witness has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Fed. R. Evid. 702 requires that expert testimony be both "reliable and relevant" whether based on scientific, technical, or other specialized knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999).

Dr. B. Feinberg, M.D., is Board Certified in Internal Medicine and has been licensed to practice medicine by the State or California since 1997. (Feinberg Decl., ECF No. 55-8 at 1 ¶2.) He has 25 years of experience in the field of Internal Medicine. (Id.) He is currently employed by California Correctional Health Care Services (CCHCS) and serves as the Chief Medical Consultant for the CCHCS Office of Legal Affairs, a position that he has held since February 2017. (Id. at 2 ¶3.)  Prior to his current position, he served as a full-time primary care physician in two California prisons -- Folsom State Prison and Mule Creek State Prison -- from January 2010 to January 2017. (Id. ¶4.)  He is familiar with the standard of care and skill ordinarily exercised by reputable members of the medical profession providing medical care in prison, and he is familiar with practices, policies, and procedures promulgated by the CDCR and CCHCS regarding the delivery of health care to inmates in CDCR's prisons. (Id. ¶¶4, 5.)

Here, Dr. B. Feinberg, M.D., declared under penalty of perjury as follows, with regard to Dr. Zepp's treatment of Plaintiff's pain:

> "Based upon my review of the medical records, my training and experience, it is my professional opinion that Plaintiff's claim that Defendant Dr. Zepp failed to provide sufficient pain medication as Plaintiff awaited surgery from February 5, 2019 to March 25, 2019, is not supported by the medical record.  Dr. Zepp was attentive to his patient in making a referral to the urologist, and his treatment was medically appropriate.  Plaintiff was not without pain medication during the relevant time period, including Ibuprofen and Tylenol.  Additionally, after Plaintiff's appointment with Dr. Zepp on February 5, 2019, Dr. Zepp was not subsequently contacted or consulted during the relevant time period regarding Plaintiff's complaints of pain from his epididymal cyst.  However, those physicians who were, Drs. Ulit and Sao, also declined to renew the Tylenol with codeine prescription.  Nor did Dr. McBride, the specialist whose recommendations guided the management of Plaintiff's epididymal cyst, state or suggest that Plaintiff's resulting pain was being inadequately treated, nor issue recommendations for Tylenol with codeine or any other alternate treatment of Plaintiff's pain."

(Feinberg Decl., ECF No. 55-8 at 6 ¶28.)

Based on Dr. Feinberg's declaration and a review of Dr. Feinberg's background, the Court accepts Dr. Feinberg's opinion as expert testimony under Federal Rules of Evidence 702 as to the medical care rendered by Defendant to Plaintiff, to the extent relevant.

## XIII.   DISCUSSION

To begin, Plaintiff's sole claim at issue in this case is limited to whether Defendant Dr. Zepp was **deliberately indifferent** to Plaintiff's medical needs by refusing to renew Plaintiff's requested pain medication, Tylenol with Codeine (T3), after Plaintiff's prescription for that drug expired on February 3, 2019.   Of note, the district court previously dismissed Plaintiff's

claims for retaliation, deliberate indifference to safety, and deliberate indifference regarding his diabetes and seizure medications.  (ECF No. 37 at 2.)

**A.    <u>Law</u>**

To establish an Eighth Amendment violation a prisoner must satisfy both the **objective** and **subjective** components of a two-part test.  To meet the **objective** element, a plaintiff must demonstrate a serious medical need.  <u>Estelle</u>, 429 U.S. at 104; <u>Ramirez v. Johnson</u>, 2:17-cv-7788-DFS-KES (C.D. Cal. July 24, 2020) 2020 U.S.Dist.Lexis 157482 at *21.  A serious need exists if failure to treat the injury or condition could result in further significant injury or cause the unnecessary and wanton infliction of pain.  <u>Jett</u>, 439 F.3d at 1096.  Under the **subjective** element of the test, a prison official is deliberately indifferent only if the official knows of and disregards an excessive risk to  an inmate's health and safety.  <u>Toguchi</u>, 391 F.3d at 1057.  Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.  <u>Id.</u>  Further, a mere difference of medical opinion cannot support a claim of deliberate indifference--in other words, where a defendant has based his/her actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference **as a matter of law**.  <u>Jackson</u>, 90 F.3d at 332; <u>Ramirez</u>, 2020 U.S.Dist.Lexis 157482 at *22.  In this regard, a difference of opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference.  <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989); <u>Clark v. Gutierrez</u>, 1:21-cv-01386-EPG (PC) (E.D. Cal June 3, 2022), 2022 U.S.Dist.Lexis 99624 at *19.  To establish a difference of opinion rising to the level of deliberate indifference, a plaintiff must show that the course of treatment the doctor chose was medically unacceptable under the circumstances.  <u>Jackson</u>, 90 F.3d at 332.

Moreover, the inadvertent or negligent failure to provide adequate medical care does not of itself state a claim under section 1983.  (<u>Estelle</u>, 429 U.S. at 105-106.).  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  Even gross negligence is insufficient to establish a cognizable claim for deliberate indifference to serious medical needs.  <u>Govea v. Lee</u>, No. CV 20-5443-DMG (KS) (C.D. Cal. Jan. 24, 2022), 2022

U.S.Dist.Lexis 52725, at *19.  A prisoner must show that the chosen course of treatment was **medically unacceptable** under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health.  (Thomas v. Antipov, No. 2:11-cv-1138-MCE-EFB P (E.D. Cal. Feb. 12, 2015), 2015 U.S.Dist.Lexis 17578, at *24-25) (emphasis added).  As well, a plaintiff must show that the defendant's actions were the **actual and proximate cause** of his injuries. Govea, 2022 U.S.Dist.Lexis 52725 at *19. (emphasis added).

It is important here to distinguish between the standard used by the court at the **screening stage** versus the standard used by the court when ruling upon  a motion for summary judgment. In a screening situation, the 9th Circuit in the case of Baptiste v. Dunn, 448 Fed. Appx. 680 (9th Cir. 2011), held that a prisoner stated a claim for deliberate indifference where the complaint alleged that defendants knew of and disregarded the *possibility* of adverse long-term effect to the plaintiff's health arising from the failure to check the progress of his periodontal disease.  Govea, 2022 U.S. 52725, at *24.  This is because allegations in a complaint at the screening stage are to be liberally construed, even when evaluating them under Iqbal, particularly in civil rights cases. Jackson v. Barnes, 749 F.3d 755 (9th Cir. 2014).  But this is not the case when deciding a motion for summary judgment.  To defeat summary judgment the opposing party (here Plaintiff) must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  **First**, the dispute must be over fact(s) that are material, i.e., one that makes a difference in the outcome of the case.  A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Thomas, 2015 U.S.Dist.Lexis, at *16. **Second**, the dispute must be genuine, and in determining this the court must again focus on which party bears the burden of proof on the factual issue in question.  The party opposing summary judgment must, if the burden has shifted to him, by affidavit or otherwise, designate specific facts that show there is a genuine issue for trial.  Absent such evidence there simply is no reason for trial. At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.  Id. at *14.

B.   **Application**

1.   **Plaintiff Had a Serious Medical Need (Objective prong)**

The parties do not dispute that Plaintiff presented with a serious medical need because he was diagnosed with an epididymal cyst on his left testicle and reported pain from the cyst that increased with time as the cyst grew larger.

2.   **Dr. Zepp Knew About Plaintiff's Serious Medical Need**

There is no dispute that Defendant Dr. Zepp knew as early as December 2017 that there was an epididymal cyst on Plaintiff's left testicle. (ECF No. 55-3 at 8 ¶21.)  Plaintiff declares that "Dr. Zepp was aware I had this recurring epididymal cyst from the beginning of his employment at 'KVSP.'  I informed Dr. Zepp the cyst was painful and getting worse.  Also that the cyst was growing."  (Pltf's Decl. ECF No. 53 at 28 ¶66.)  Plaintiff's ultrasound report to Dr. Zepp dated March 15, 2018 shows a "Large left epididymal cyst" measuring "3.4 x 1.9 x 2.7" is present on the left testicle.  (Exhibit #16 to Pltf's Decl., ECF No. 53 at 74.)  There is also no dispute that on January 4, 2019, Dr. Zepp prescribed Tylenol with codeine for Plaintiff for Plaintiff's complaint of pain from his left epididymal cyst, to be taken for 30 days.  (Pltf's Decl., ECF No. 53 at 31-32 ¶88; Deft's Answer, ECF No. 44 at 119 ¶38; FAC, ECF No. 14  ¶38; Zepp Decl., ECF No. 55-7 at 3 ¶ 10, Ex. A at AGO 10-11 (pp. 18-19); Feinberg Decl., ECF No. 55-8 ¶ 12, Ex. B at AGO 10-11 (pp. 19-20).

3.   **Dr. Zepp was not deliberately indifference (subjective prong)**

The issue then becomes whether Dr. Zepp was **deliberately indifferent (subjective prong)** because he refused to renew Plaintiff's Tylenol #3 medication after the medication expired on February 3, 2019, while Plaintiff was awaiting surgery scheduled on March 25, 2019. Evidence shows that Dr. Zepp knew Plaintiff continued to suffer pain after February 3, 2019.

a.  **Dr. Zepp**

Dr. Zepp was Plaintiff's primary care doctor at KVSP for a period of time.  (ECF No. 44 at 3 ¶22).  While Plaintiff was Dr. Zepp's patient, Dr. Zepp treated Plaintiff for several conditions including, but not limited to diabetes, kidney stones, seizure, and a left epididymal cyst, referring him to specialists where medically indicated. (ECF No. 55-7 at 2).  On February 5, 2019, Plaintiff

was seen by Dr. Zepp and reported pain from the cyst. (Pltf's Decl., ECF No. 53 at 32-33 ¶¶93, 97, Exh. #24; Zepp Decl., ECF No. 55-7 at 4 ¶ 12, Ex. A at AGO 13-14 (pp. 21-22); Feinberg Decl., ECF No. 55-8 at 4 ¶ 13, Ex. B at AGO 13- 14 (pp. 22-23)). Plaintiff declares that the Tylenol with codeine reduced his pain from 6-7/10 to 1/10. (Pltf's Decl., ECF No 53 at 32 ¶89.) On February 5, 2019, Plaintiff told Dr. Zepp that the Tylenol with codeine was highly effective at reducing his testicular pain and asked Dr. Zepp to renew the prescription for another 30 days. (Id. at ¶¶99, 100.). Although the following is a disputed fact and therefore cannot be used in support of Dr. Zepp's summary judgment motion, interestingly on January 22, 2019, RN Johnson noted that Mr. Solvey reported that the Tylenol with codeine (T3) was no longer working and he had developed a tolerance and requested different pain medications. (Zepp Decl., ECF No. 55-7 ¶11, Exh A at AGO 12 (p. 20)), however Plaintiff disputes saying this. (ECF No. 69 at 13 ¶67).

Evidence shows that on January 4, 2019, when Plaintiff met with Dr. Zepp after returning to KVSP following his emergency visit to DRMC, Dr. Zepp had reservations about prescribing opioids to control Plaintiff's pain but nevertheless prescribed Tylenol with codeine following Plaintiff's report of excruciating pain resulting in his emergency visit to DRMC. Dr. Zepp declares:

> "Because Mr. Solvey had just returned from the hospital, for his complaint of pain I issued a temporary prescription for Tylenol with codeine, commonly referred to as Tylenol #3 or T3, to take twice daily, when necessary for thirty days. I prescribed Tylenol with codeine, which is an opioid for only a short duration because the more a patient takes the medication, the more it is needed causing a tolerance to the medication. Additionally, long term use of opioids can lead to addiction and dependence." (Zepp Decl., ECF No. 55-7 at 3 ¶10.)

When Dr. Zepp saw Plaintiff on February 5, 2019, which was Plaintiff's last visit with Dr. Zepp before surgery was performed on March 25, 2019, Dr. Zepp examined Plaintiff and determined there was no medical indication to renew the Tylenol with codeine. Instead, he referred Plaintiff to other medical specialists who were treating him for his cyst, foot pain, and left hand pain. Dr. Zepp declared:

"I saw Mr. Solvey on February 5, 2019, for a follow-up regarding several issues including his left epididymal cyst. During my exam, Mr. Solvey did not appear to be in distress. He had normal ambulation, and his blood pressure and heart rate were normal. His presentation and vitals were not objectively indicative of pain. I noted that Mr. Solvey was pending his follow-up with Dr. McBride. I further noted Mr. Solvey's request for medications for foot pain. I examined Mr. Solvey's feet, and observed no evidence of numbness in the feet called neuropathy. However, I placed a request for Mr. Solvey to be seen by a specialist in neurology for a consult for further evaluation of the issue. For Mr. Solvey's complaint of left hand pain, I placed a separate request for him to be seen by an orthopedic surgeon. Because Mr. Solvey's presentation and vitals were not objectively indicative of pain, he had other non-opioid pain medication available to him including Tylenol and Ibuprofen, and had a urology consult pending, I determined there was no medical indication to renew the Tylenol with codeine at that time." (Zepp Decl. ECF No. 55-7 at 4 ¶12.)

Without renewal of the Tylenol with codeine, Plaintiff complained that he did <u>not</u> have any medication from Dr. Zepp, or any over-the-counter medications available to him from the canteen between February 5, 2019 and March 25, 2019:  (Pltf's Decl., ECF No. 68 at 4 ¶22.) However, evidence shows that on February 22, 2019, Dr. Ulit gave orders for Plaintiff to receive regular Tylenol to take as needed for pain, and on March 4, 2019, Dr. Sao ordered Ibuprofen 400 mg. to take 3 times a day as needed for pain.  (Feinberg Decl., ECF No. 55-8 at 5 ¶¶20, 22.) Thus, even though Plaintiff reported that the pain medication was not working for his cyst, he did have pain medications available.  (Id. ¶¶21, 24.)  **Importantly**, Plaintiff in his deposition, taken on January 7, 2022, admits that he had both access to and took pain medication during the relevant period of time between February 5, 2019, and March 25, 2019.  (Singer Decl., ECF No. 55-6 at 13-15).   Plaintiff has clarified that he did not have any over-the-counter (OTC) medications from the prison canteen available to him between February 5, 2019 and March 25,

2019, (ECF No. 68 at 3-4 ¶¶18-19), but he admits that he had access to OTC medications from other inmates on the tier, (Id. at 3-4 ¶¶18-19).

> Q. During the time period of January 2019 up until your surgery in March 2019, did you have any pain relievers that were KOP?
>
> A. There are some you can buy at the canteen -- or not buy, you can order through the canteen, which are OTC's and I had some of those -- 200 milligram ibuprofens and Naproxens. I was taking those. And then I did some -- for people on the tier that -- because they only give you a couple bottles of those and they are real low dose so you have to take a lot of them. But I was getting those from the inmates on the tier as well.

(Pltf's Depo., ECF No. 55-6 at 13:6-12.)

> Q. About how much of the over-the-counter medication were you taking between February 5, 2019 and the surgery?
>
> A. At least eight -- eight to 10 pills a day 200 milligrams each. Separated into like morning and night. I was doing the best I can to get those -- some days I didn't have them. Inmates -- I couldn't get them because there was a limited supply. I remember that.

(Id. at 14:2-9.)

**Significantly**, Plaintiff reported on March 1, 2019 that he was taking regular Tylenol and OTC NSAIDS. (ECF No. 53 at 100.) Further, and just as **important**, Plaintiff is very familiar with making requests for pain medication. (E.g., Health Care Services Request Forms, ECF No. 53 at pgs 41, 79, 87, 89, 98, 100.)

As discussed above, "[d]eliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson, 290 F.3d at 1188).

Here, even if Dr. Zepp knew about Plaintiff's pain, there is no evidence that he treated Plaintiff with deliberate indifference.  First, on January 4, 2019, when Dr. Zepp prescribed Tylenol with codeine for Plaintiff, he limited the "temporary" prescription to twice daily, when necessary, for thirty days.  (Zepp Decl., ECF No. 55-7 at 3 ¶10.)  It was Dr. Zepp's medical opinion that Tylenol with codeine is an opioid to be used for only a short duration because the more a patient takes the medication, the more it is needed causing a tolerance to the medication, and long term use of opioids can lead to addiction and dependence.  (Id.)

Based on Dr. Zepp's observation after his visit with Plaintiff on February 5, 2019, Plaintiff did not appear to be in distress, had normal ambulation, normal blood pressure, and a normal heart rate. His presentation and vitals were not objectively indicative of pain. (Zepp Decl. ¶12, Ex. A at AGO 13-14; Feinberg Decl. ¶13, Ex. B at AGO 13- 14).  Dr. Zepp determined that because Plaintiff's presentation and vitals were not objectively indicative of pain, that Plaintiff had other non-opioid pain medication available to him including Tylenol and Ibuprofen, and had a urology consult pending, there was no medical need to renew the Tylenol with codeine at the time. (Zepp Decl. ¶¶ 12, 24 Ex. A at AGO 13- 14; Feinberg Decl. ¶¶ 13, 28, Ex. B at AGO 13-14.)  On March 4, 2019, Dr. Zepp in his declaration stated that Plaintiff saw RN Davis after submitting a Health Care Services Request Form reporting that the Tylenol was not effective for his pain, so RN Davis consulted with Dr. Sao who ordered Ibuprofen 400 mg.  (Zepp Decl. ¶18).  Then on March 6, 2019, Plaintiff saw Dr. Ulit for a follow-up regarding several issues including his left epididymal cyst. Dr. Ulit reviewed Dr. McBride's note and submitted a request for surgery. Dr. Ulit further noted "today he is fine, no acute swelling." (Zepp Decl. ¶ 19, Ex. A at AGO 48-49; Feinberg Decl. ¶ 23, Ex. B at AGO 48- 49).

### b.  Other Medical Providers

Dr. Zepp referred Plaintiff's medical care to other medical providers after February 5, 2019, and there is no evidence that Dr. Zepp was involved in Plaintiff's medical care from February 6, 2019 through March 25, 2019.  Plaintiff reported his pain to other medical providers, but none of his medical visits between February 6, 2019 and March 25, 2019 were with Dr. Zepp. (Pltf's Decl., ECF No. 53 at ¶13; Singer Decl., ECF No. 55-6 Ex. A., Plaintiff Depo. 34:7-11 (p.

12); Zepp Decl., ECF No. 55-7 at 4-5 ¶¶ 13-20, Ex. A at AGO 17-24 (pp. 25-32.), 26-27 (pp. 34-35), 29-36 (pp. 37-44), 38-61 (pp. 36-69); Feinberg Decl., ECF No. 55-8 at 4-6 ¶¶14, 16, 18, 20, 22-25, 28, Ex. B at AGO 15 (p. 24), 17-24 (pp. 26-33), 26-27 (pp. 35-36), 29-36 (pp. 38-45), 38-61 (pp. 47-70). **Importantly**, Plaintiff continued to receive medical care, but after the Tylenol #3 prescription expired none of the other medical providers prescribed the pain medication Plaintiff requested. In this regard the following events are pertinent:

(1)    Plaintiff saw Urologist Dr. Albert McBride on February 20, 2019, who noted in his report "no scrotal tenderness" but acknowledged that Plaintiff described the cyst as painful. (Feinberg Decl., ECF No. 55-8 at 5 ¶18, Ex. B at AGO 26-27 (pp. 35-36); Zepp Decl., ECF No. 55-7, Exh. A AGO 26-27 (pp. 34-35.)) Dr. McBride did not recommend pain medication stating that he could not prescribe pain medication to "C.D.C.R." prison inmates, that only the prison's doctor could do so. (Pltf's Decl., ECF No. 53 at 34 ¶108-109, & Exh. 26 (p. 95); Zepp Decl., ECF No. 55-7 at 5 ¶ 16, Ex. A at AGO 26-27 (pp. 34-35); Feinberg Decl., ECF No. 55-8 ¶ 18, Ex. B at AGO 26- 27 (pp. 35-36);

(2)    On February 22, 2019, Plaintiff saw RN Blankenship and requested pain medication for his cyst.   ( Zepp Decl., ECF No. 55-7 at 5 ¶ 17, Ex. A at AGO 28-36 (pp. 36-44); Feinberg Decl., ECF No. 55-8 at 5 ¶¶ 19-20, Ex. B at AGO 28-36 (pp. 37-45)).  RN Blankenship consulted with Dr. Ulit who gave orders for Plaintiff to receive regular Tylenol 325 mg. to take as needed for pain. (Id.; Pltf's Decl., ECF No. 53 at 35 ¶112.);

 (3) On March 4, 2019, Plaintiff saw RN Davis and reported pain from the cyst. (Zepp Decl., ECF No. 55-7  at 5 ¶18 and Exh. A at AGO 38-47; Feinberg Decl., ECF No. 55-8 ¶22 and Exh. B at AGO 38- 47 (pp. 46-55).  RN Davis consulted with Dr. Sao who prescribed Ibuprofen 400mg 3x daily for 10 days until March 14, 2019, the day before the surgery. (Id.)  The  RN informed Plaintiff that the doctor would not prescribe a pain medication more effective than the Tylenol 325 mg.  (Pltf's Decl., ECF No. 53 at 35 ¶115.)

### c.    Dr. Feinberg

Finally, there is Defendant's medical expert witness's professional opinion that Plaintiff's claim that Defendant Dr. Zepp failed to provide sufficient pain medication between February 5, 2019 and March 25, 2019, is not supported by the medical record.  (Feinberg Decl., ECF No. 55-7 at 4 ¶12.)  Dr. Feinberg stated that Dr. Zepp was attentive to his patient in making a referral to the urologist, and his treatment was medically appropriate.  (Id.)

### d.    Plaintiff's inadmissible opinion

Plaintiff is not competent to provide medical opinion evidence sufficient to create any triable issue of fact in this case.  See Fed. R. Civ. P. 56(c)(4) ("affidavit or declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  Plaintiff has presented no expert opinion evidence that any conduct by Dr. Zepp in response to Plaintiff's medical need fell below the medical standard of care so significantly that it could constitute deliberate indifference under the Eighth Amendment, or that Dr. Zepp acted unreasonably in response to the knowledge that Plaintiff faced a substantial risk of serious harm, causing Plaintiff harm.  Rather, Plaintiff's arguments rely entirely on his non-medical opinion.  Plaintiff's opinion, to the extent it seeks to counter the medical opinion of Dr. Feinberg's testimony is not admissible under Rule of Evidence 701 because he is a layman and not a medical expert:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Thus, the mere lay opinion by Plaintiff that stronger drugs were needed than the ones he had been prescribed or otherwise had access in order to address his pain is insufficient as a matter of law to support the subjective prong of an 8th Amendment medical claim.

          **e.**     **Causation**

Because Plaintiff has not established that Dr Zepp was **deliberately indifferent** (subjective prong), there is no issue of causation.

## XIV.   IN SUMMATION

The Court finds that Plaintiff had a serious medical need because he suffered significant pain from a testicular cyst.  After Plaintiff went "man down" because of pain and was given emergency transport to an outside hospital, Dr. Zepp prescribed Tylenol with codeine for Plaintiff, a temporary pain medication limited to only 30 days, which Dr. Zepp recognized as an opioid to be used for only a short duration because of its side effects.  After the 30 days, when the prescription expired, although Plaintiff continued to report pain, Dr. Zepp refused to renew the prescription and referred Plaintiff to other medical providers, where Plaintiff' medical condition was reviewed by urologist Dr. McBride, Dr. Ulit, and Dr. Sao, who were all made aware that Plaintiff suffered pain, but neither of latter two doctors who had the authority to prescribe pain medications to prisoners recommended renewal of the Tylenol with codeine prescription .  While Plaintiff awaited surgery, Dr. Ulit gave orders for Plaintiff to receive regular Tylenol to take as needed for pain, and Dr. Sao ordered Ibuprofen 400 mg to be taken three times a day for ten days as needed for pain.  Plaintiff reported that the non-opioid medications were not effective and he continued to suffer significant pain until his surgery on March 25, 2019, at which time his painful cyst was removed.

Although Plaintiff clearly disagrees with the care he received from Dr. Zepp, and argues that he should have been kept on Tylenol with codeine until time for surgery, Plaintiff introduces no evidence demonstrating that any of his medical providers recommended that Plaintiff continue to take Tylenol with codeine, or that Dr. Zepp's decision was deliberately indifferent to his serious medical needs.

Moreover, Plaintiff has not met his burden to present evidence showing that Dr. Zepp was deliberately indifferent in response to Plaintiff's medical need. The analysis of a medical claim under the Eighth Amendment rests on whether Defendant knew about Plaintiff's serious medical needs, was consciously aware that Plaintiff faced a substantial risk of serious harm to his health, and yet deliberately ignored the risk or otherwise acted unreasonably, causing Plaintiff harm or injury.

Even viewing the evidence in the light most favorable to Plaintiff, Plaintiff has not met his summary judgment burden to establish a genuine dispute that Dr. Zepp treated him with deliberate indifference in violation of the Eighth Amendment. Moreover, Plaintiff has not shown that the treatment course Dr. Zepp pursued was "medically unacceptable" and "in conscious disregard of an excessive risk to [his] health." Dr. Zepp provided valid, medically sound reasons for the chosen treatment plan. See Anderson v. Dzurenda, No. 3:18-cv-00426-MMD-CLB, (D. Nev. Sept. 14, 2021), 2021 WL 4171710, at *3, appeal dismissed, No. 21-16549, 2022 WL 260053 (9th Cir. Jan. 27, 2022) (quoting see Toguchi, 391 F.3d at 1058). Plaintiff's non-medical opinion that Dr. Zepp should have given him a stronger alternate treatment is at best only a difference of opinion with his medical caregiver, which does not rise to the level of an Eighth Amendment violation. Importantly, none of Plaintiff's medical providers who were involved with Plaintiff's care and treatment during the relevant time period offered Plaintiff his desired T3 pain medication, and Plaintiff admitted in his deposition that during this time period he had access to other pain medications.

Thus, based on the forgoing, Plaintiff's motion for summary judgment should be denied and Defendant's motion for summary judgment be granted.

## XV. CONCLUSION AND RECOMMENDATIONS

The court finds and shall recommend that based on the undisputed facts, Plaintiff's motion for summary judgment, filed on June 9, 2022, should be denied, and Defendant's cross motion for summary judgment, filed on June 27, 2022, should be granted. In light of this recommendation, the court declines to consider Defendants' qualified immunity argument.

Therefore, based on the foregoing, it is **HEREBY RECOMMENDED** that:

1.     Plaintiff's surreply/motion for a finding of perjury and sanctions filed on December 15, 2022, be DENIED;

2.     The motion for summary judgment filed by Plaintiff on June 9, 2022, be DENIED and Defendant Dr. Zepp's cross motion for summary judgment, filed on June 27, 2022, be GRANTED as to Plaintiff's § 1983 claims against him under the Eighth Amendment; and

3.     The Clerk of Court be directed to enter judgment in favor of Defendant Dr. Zepp and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **On or before October 4, 2023**, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within **ten (10) days** after the date the objections are filed.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 8, 2023**          **/s/ Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE